# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DANIELLE SANDRA GATZMAN,<br><br>      Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL,<br>**Commissioner of the Social Security Administration,** [1]<br><br>      Defendant. | )<br>)<br>)<br>)<br>)   Case No. CIV-18-242-JHP-SPS<br>)<br>)<br>)<br>)<br>)<br>) |

## REPORT AND RECOMMENDATION

The claimant Danielle Sandra Gatzman requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. Additionally, the claimant filed a motion requesting oral argument. For the reasons discussed below, the motion requesting oral argument is hereby DENIED and the Commissioner's decision should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Saul is substituted for Nancy A. Berryhill as the Defendant in this action.

Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was twenty-four years old at the time of the administrative hearing (Tr. 43). She has a high school education and has worked as a communications technician (Tr. 60, 288). The claimant alleges that she has been unable to work since January 1, 2015, due to posttraumatic stress disorder ("PTSD") and anxiety (Tr. 287).

## Procedural History

On August 1, 2016, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 12, 245-46). Her application was denied. ALJ Lantz McClain conducted an administrative hearing and a supplemental hearing and determined that the claimant was not disabled through her date last insured of June 30, 2016, in a written opinion dated March 1, 2018 (Tr. 12-30). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found the claimant could perform work at all exertional levels, but was limited to simple repetitive tasks, could relate to supervisors and coworkers superficially, and could not work with the

public (Tr. 18). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the national economy, *i. e.*, hand packager and laundry worker (Tr. 28-30).

### Review

The claimant contends that the ALJ erred by: (i) improperly determining that she did not meet the requirements of Appendix 1, Part 404, Subpart P ("the Listings"), specifically Listings 12.04, 12.06, and 12.15; (ii) failing to properly assess the evidence at step four in determining her RFC; (iii) improperly discounting her subjective statements; and (iv) ignoring the testimony of the Vocational Expert ("VE"). At step four, the claimant specifically asserts that the ALJ failed to properly evaluate the evidence from treating physician Dr. Raidoo, consultative physician Dr. Rippy, and medical expert Dr. Simonds, and failed to properly account for her disability rating from the Veteran's Administration ("VA"). The undersigned Magistrate Judge finds these contentions unpersuasive for the following reasons.

The ALJ found the claimant had the severe impairments of anxiety, PTSD, and depression, but that her migraine headaches were nonsevere (Tr. 15-16). The relevant medical evidence reveals that the claimant received treatment exclusively through the Jack C. Montgomery VA Medical Center. On March 22, 2014, claimant presented to the emergency department seeking mental health services because she was sexually assaulted by a civilian in June 2013 while serving in the Army, was having difficulty coping for several months, and was feeling more depressed since disclosing the assault to her mother (Tr. 423-25, 432-35).

Psychiatrist Dr. Mark Fossey regularly treated the claimant for depression, panic disorder with agoraphobia, adjustment disorder with mixed emotions, and PTSD from April 2014 through March 2016 (Tr. 387-406, 442-565, 614-44, 668-71). Dr. Fossey's mental status examinations were largely normal (Tr. 470). By the end of June 2015, the claimant reported that her medications were working well to control her daytime panic, her mood was better overall, she was less irritable, and had not experienced a recent panic attack (Tr. 467-68). She reported similar improvement for the remainder of her appointments in 2015 (Tr. 447-51, 456-57, 463-64). In November 2015, the claimant reported that her medications were "definitely effective" for her social anxiety in the classroom, particularly her performance anxiety on test days, and that she still had brief periods of depression but was frequently not taking her medications on the weekends (Tr. 447). Dr. Fossey observed that the claimant was more relaxed at this appointment than she had been at any previous appointments (Tr. 447). The claimant did not appear for her December 2015 appointment, but her mother called and expressed no concerns about the claimant's safety and ability to function (Tr. 443). In March 2016, the claimant reported she was getting careless about taking her psychotropic medications and that she experienced increased depression after missing doses (Tr. 638).

Additionally, Linda Standing Cloud, a licensed clinical social worker, provided counseling services to the claimant in April 2014 and May 2014, and again from January 2015 through February 2016 (Tr. 389-403). At her 2014 appointments, the claimant consistently reported an improvement in her depression, mood, and irritability, but that her anxiety in crowds persisted (Tr. 390-93, 396-403). Ms. Standing Cloud's mental status

examinations were normal despite the claimant's depressed mood and blunted affect, and indicated that her concentration, abstraction, and memory were good (Tr. 391-93, 397, 402, 438-566). In January 2015, the claimant reported difficulty staying on task and daily irritability that she could control but experienced nonetheless (Tr. 390, 389, 565-66). Beginning in August 2015, she consistently reported that her concentration was normal (Tr. 438-566).

On January 28, 2015, Alyssa Rippy, Ph.D. conducted a compensation and pension examination of the claimant in connection with her application for VA disability benefits (Tr. 719-25). She noted that the claimant appeared shy and hesitant and became visibly anxious and tearful when discussing the assault (Tr. 724). Dr. Rippy concluded that the claimant met the full criteria for a current diagnosis of PTSD and that her symptoms were moderate to severe and resulted in social and occupational limitations (Tr. 725). The VA determined that the claimant was 80% disabled effective January 14, 2014, with 70% rated to PTSD and 30% rated to migraines, and she was granted individual unemployability benefits (Tr. 263-70, 272-76).

Edgar J. Kranau, Ph.D. also conducted a compensation and pension examination of the claimant on July 14, 2015 (Tr. 726-32). He noted the claimant was extremely anxious throughout the interview, made minimal eye contact, and spoke in a very soft, halting manner (Tr. 731-32). He also noted she became tearful and upset when describing the assault (Tr. 732). Dr. Kranau diagnosed the claimant with major depressive disorder and PTSD and opined that she could not perform physical or sedentary duties of employment (Tr. 732).

-6-

On August 27, 2016, state agency psychologist Phillip Massad, Ph.D. completed a Mental RFC Assessment and found the claimant was markedly limited in her ability to understand, remember, and carry out detailed instructions, and moderately limited in her ability to interact appropriately with the general public (Tr. 107-08). Dr. Massad concluded that the claimant could perform simple, repetitive tasks, but no complex tasks and was limited in her ability to work with the general public (Tr. 108). On November 16, 2016, state agency psychologist Burnard Pearce, Ph.D. affirmed Dr. Massad's conclusion, but found the claimant was moderately limited in her ability to maintain attention and concentration for extended periods (Tr. 119-21).

The evidence after the claimant's date last insured of June 30, 2016, suggests that Dr. Raidoo treated the claimant for PTSD and bipolar disorder from April 2017 through at least January 2018, but the record contains no treatment notes until August 2017 (Tr. 744-46, 757-58, 769). Dr. Raidoo's mental status examinations indicate that the claimant's mood ranged from very anxious to slightly anxious, but he consistently noted that her affect, attention, and concentration were within normal limits and that her judgment and insight were fair (Tr. 744-48, 752-54, 757-58). The claimant regularly reported that her medications improved her symptoms but did not alleviate them, particularly as to her anxiety (Tr. 744-48, 752-54, 757-58). Dr. Raidoo completed a Mental RFC Assessment on August 11, 2017, wherein he opined that the claimant was markedly limited in ten aptitudes, including her ability to: (i) maintain attention and concentration for extended periods; (ii) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and (iii) interact appropriately with the general

public (Tr. 737-38). He further opined that the claimant was moderately limited in six aptitudes, including her ability to remember locations and work-like procedures and carry out detailed instructions (Tr. 737-38). In the form's narrative section, Dr. Raidoo stated:

> Ms. Gatzman was [the] victim of sexual trauma on 6/15/2013. Diagnosis of PTSD secondary to MST, with current extreme anxiety impacting [her] ability to function in an environment that requires interaction with anyone outside of her immediate family. At this time [she] is not able to sustain concentration and attention required for tasks that may be required in a work environment due to anxiety and hypervigilance (Tr. 739).

In a treatment note dated January 22, 2018, Dr. Raidoo stated that the claimant was not currently employable, but the remainder of his treatment note is missing (Tr. 769).

At the administrative hearing, the claimant testified that since she was assaulted in June 2013, she experiences migraine headaches approximately once a week, and that her medication helps "that day." (Tr. 57). She stated that she is essentially bedridden during a migraine and would need to miss work at least one day per week due to migraines (Tr. 53). As to her panic attacks, she stated that she experiences them at least three times per week, that they last a few hours, and that she isolates or goes to her parents' house and holds her daughter or cat during them (Tr. 53-54). The claimant also indicated that counseling did not "really" help her (Tr. 54-55). At the supplemental hearing, the claimant testified that she experienced panic attacks two or three times per week that last an hour or two, that she goes to her mother's house during them, and that when she was working, she left work three times per week due to panic attacks (Tr. 88-90). As to her depression, the claimant stated that she was so depressed that she does not want to get out of bed one or two times per week (Tr. 90).

The ALJ also called Dr. John Simonds, a board-certified psychiatrist and neurologist, to testify as a medical expert at the supplemental hearing (Tr. 65-100, 742-43). Dr. Simonds testified that the claimant's PTSD, depression, and anxiety improved significantly with psychotherapy and medication (Tr. 71-72). He opined that Dr. Raidoo's RFC was not credible in light of the claimant's response to treatment, and that the claimant's impairments improved with treatment to the point that she was not markedly impaired (Tr. 72, 84). He concluded that the claimant's depression did not meet Listing 12.04 because her mood was mostly euthymic according to VA records, and her depression was improved and in remission; her anxiety did not meet Listing 12.06 because it was mild to moderate; and her PTSD did not meet Listing 12.15 because it improved with medication and psychotherapy (Tr. 73-74). Dr. Simonds opined that the claimant had mildly impaired concentration, mild to moderately impaired adaptability, and mildly impaired social interaction, which might be in the moderate range when in crowds (Tr. 74). He concluded that the claimant was capable of detailed and possibly some complex tasks, and despite her anxiety, could deal with the public and co-workers superficially (Tr. 74).

In his written opinion, the ALJ summarized the claimant's testimony and the medical evidence. At step three, the ALJ stated that he considered Listings 11.02, 12.04, 120.06, and 12.15, and concluded that her impairments did not meet or medically equal any listing (Tr. 16-17). In discussing the opinion evidence at step four, the ALJ assigned little weight to Dr. Raidoo's RFC assessment because: (i) his assessment was not well supported by concurrent treatment records, (ii) he did not have a lengthy treating relationship with the claimant, and (iii) he relied too heavily on the claimant's subjective

statements (Tr. 25). The ALJ assigned some weight to Dr. Simonds' expert opinion, noting he agreed that the claimant's treatment records revealed a much greater level of functioning than suggested by her VA disability rating and Dr. Raidoo's RFC. However, the ALJ further limited the claimant to simple repetitive tasks and no work with the public due to her anxiety and other psychological problems (Tr. 26-27). The ALJ then assigned significant weight to the state agency psychologists' opinions because they were well supported by medically acceptable clinical findings and were consistent both with the record as a whole and with specific records showing: (i) her substance abuse disorder and bipolar disorder were in remission, (ii) she reported mild depression in December 2017, (iii) her anxiety improved with medication, and (iv) she denied depression or panic attacks, and reported only mild anxiety in October 2017 (Tr. 27-28).

The claimant asserts that the ALJ erred in evaluating the medical source opinion evidence from treating physician Dr. Raidoo, consultative physician Dr. Rippy, and medical expert Dr. Simonds. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to

-10-

which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). The ALJ's treatment of Dr. Simonds' opinion and Dr. Raidoo's August 2017 opinion, as described above, meets these standards. The ALJ specifically addressed their findings, and the undersigned Magistrate Judge finds that he considered each opinion in turn and gave numerous reasons, supported by the record, for adopting or not adopting the limitations described in them. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case.") [internal citation omitted].

The claimant's specific complaint as to Dr. Simonds' opinion is that the ALJ engaged in improper "picking and choosing" when he adopted Dr. Simonds' opinions that claimant's symptoms improved with treatment and that the record revealed a much higher level of functioning than indicated by the VA rating and Dr. Raidoo. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (An ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). She asserts that the ALJ ignored Ms. Standing Cloud's counseling notes that reflect some abnormal mental status examination findings, including a depressed mood and blunted affect. This is not borne out by the record, however, because the ALJ did specifically note several of Ms. Standing Cloud's notes and mental status examination

findings and concluded they were essentially normal (Tr. 22-23). "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton*, 79 F.3d at 1009-10. Here, the ALJ did not recite every one of Ms. Standing Cloud's counseling notes, but he clearly considered them (Tr. 21-23). Furthermore, a depressed mood and an abnormal affect at counseling sessions is not sufficient to rebut the ALJ's findings as to the claimant's functional limitations.

The claimant correctly points out that the ALJ did not mention or discuss Dr. Rippy's consultative examination. Dr. Rippy diagnosed the claimant with PTSD and indicated that she had social and occupational limitations. However, the claimant does not point to any diagnosis or limitations Dr. Rippy identified that the ALJ did not adopt. The ALJ found the claimant's PTSD was a severe impairment and he included limitations in the RFC to account for her PTSD. Given that the ALJ did not reject any impairments or limitations found by Dr. Rippy, remand to evaluate her opinion is not warranted. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012) (ALJ's failure to assign a specific weight to a consulting examiner's opinion was harmless where the opinion was generally consistent with the ALJ's residual functional capacity findings). Similarly, the ALJ did not mention or discuss Dr. Raidoo's January 2018 opinion that the claimant was "currently unemployable." (Tr. 769). While Dr. Raidoo's January 2018 opinion would be relevant to the claimant's potential disability in January 2018, his opinion is not retrospective to the period before her date last insured and is therefore not significantly probative. *See Candelario v. Barnhart,* 166 Fed. Appx. 379, 385 (10th Cir. 2006) (unpublished) (indicating a medical source opinion that the claimant was incapable of even

part-time work was irrelevant because the medical source examined the claimant significantly after his date last insured). Additionally, Dr. Raidoo's January 2018 opinion is similar to his August 2017 opinion in that both suggest the claimant is unable to work (Tr. 739, 769). The ALJ, as discussed above, properly discounted Dr. Raidoo's August 2017 opinion, so any error in failing to discuss his January 2018 opinion is harmless based on its similarity to his earlier and more probative opinion. *See Lately v. Colvin,* 560 Fed. Appx. 751, 754 (10th Cir. 2014) (unpublished) (finding harmless error when an ALJ failed to expressly state or explain the weight assigned to a medical opinion when it addressed the issue of disability and was nearly identical to another opinion that was given no weight). Furthermore, the ALJ was not required to give controlling weight or to attach any special significance to Dr. Raidoo's statement that the claimant was unable to work because the determination of disability is reserved for the Commissioner. *See* Soc. Sec. Reg. 96-5p, 1996 WL 374183, at *2; *see also Olson v. Berryhill*, 689 F. Appx. 628, 631 (10th Cir. 2017) (unpublished) ("[A] treating physician may not render opinions that are essentially administrative findings . . . dispositive of a case such as whether the claimant is disabled." (internal quotation omitted).

The claimant next asserts that the ALJ erred in his analysis with regard to the VA's disability rating. An ALJ is not required to give controlling weight to the disability ratings by the VA, *see* 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."), but he is required to determine the proper

weight to give such findings by applying the factors in 20 C.F.R. § 404.1527. *See Grogan v. Barnhart*, 399 F.3d 1257, 1262-1263 (10th Cir. 2005) ("Although another agency's determination of disability is not binding on the Social Security Administration, 20 C.F.R. § 416.904, it is evidence that the ALJ must consider and explain why he did not find it persuasive."), *citing Baca*, 5 F.3d at 480. In this case, the ALJ considered the VA's disability rating, but noted Dr. Fossey's treating notes, Ms. Standing Cloud's counseling notes, and the claimant's testimony did not support such extreme limitations (Tr. 23-25). "Plaintiff proffers nothing to suggest that this rationale was not adequate or that the failure to more specifically compare and contrast the Commissioner's rules to those that informed the VA's decision might yield a different result." *Rex v. Colvin*, 26 F. Supp. 3d 1058, (D. Colo. 2014). *See also Breneiser v. Astrue*, 231 Fed. Appx. 840, 845 (10th Cir. 2007) ("There is no dispute that the ALJ considered the VA records and acknowledged the VA's 100% disability rating. . . . Mr. Breneiser argues that the ALJ should have given the VA's rating more weight, but . . . [t]he ALJ was not required to adopt the VA's conclusion."); *Jones v. Barnhart*, 53 Fed. Appx. 45, 47–48 (10th Cir. 2002) ("Simply put, the . . . [VA] proceedings are entirely different and separate from a claim under the Social Security Act, with different parties, different evidentiary standards, and different bodies of law governing their outcomes. While disability determinations by other agencies should be considered, they are not binding on the Commissioner.") (internal citations omitted).

The claimant further contends that the ALJ erred in analyzing her subjective statements because he improperly relied on her church attendance and travel to discount

them. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[3]  Tenth Circuit precedent is in accord with the Commissioner's regulations but characterizes the evaluation as a three-part test. *See, e. g., Keyes-Zachary,* 695 F.3d at 1166-67, citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).[4]  As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. § 404.1529(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief

---

[3] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[4] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-4 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-46 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). The undersigned Magistrate Judge agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10.

In this case, the Court finds that the ALJ set out the appropriate analysis, and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not believable to the extent alleged, *i. e.*, he gave clear and specific reasons that were specifically linked to the evidence in the record. Specifically, the ALJ noted inconsistencies between the claimant's testimony and: (i) Ms. Standing Cloud's counseling notes, (ii) Dr. Fossey's treatment notes, (iii) her statements to providers concerning her reasons for leaving previous jobs, (iv) her sporadic treatment after March 2016, and (v) her out-of-state travel (Tr. 21-23). Accordingly, the ALJ's determination here is entitled to deference and the undersigned Magistrate Judge finds no error in analyzing the claimant's subjective statements.

Next, the claimant asserts that she meets or medically equals the requirements of Listings 12.04 (affective mood disorders), 12.06 (anxiety-related disorders), and 12.15

-16-

(trauma and stressor related disorders).  Although the claimant bears the burden of proof at step three to establish that she meets or equals the requirements for a listed impairment, *see Fischer–Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005), the ALJ's responsibilities at step three of the sequential analysis require him to determine "whether the claimant's impairment is equivalent to one of a number of listed impairments that . . . [are] so severe as to preclude substantial gainful activity." *Clifton,* 79 F.3d at 1009 [quotation omitted].  *Clifton* requires the ALJ to discuss the evidence and explain why the claimant was not disabled at step three.  *Id.*, *citing Cook v. Heckler*, 783 F.2d 1168, 1172–73 (4th Cir. 1986).

Listings 12.04, 12.06, and 12.15 contain the following criteria: (i) "paragraph A" medical documentation criteria, (ii) "paragraph B" functional criteria, and (iii) "paragraph C" criteria for serious and persistent mental disorders.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00A(2), 12.04, 12.06, 12.15 (2017).  In order to meet one of these Listings, a claimant must satisfy the "paragraph A" medical documentation criteria and either the "paragraph B" criteria or the "paragraph C" criteria.[5]  *Id.*  The "paragraph B" criteria for all three Listings are identical, and require proof that the claimant has an extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.  *Id.*  Here, the ALJ determined

---

[5] For purposes of this opinion, the undersigned Magistrate Judge assumes *arguendo* that the claimant meets the medical documentation requirements of "paragraph A" and construes the claimant's argument to be related to the "paragraph B" criteria.

that the claimant had moderate limitations in all four areas of mental functioning and in doing so, discussed the medical evidence, the claimant's testimony, and the claimant's mother's testimony (Tr. 16-18). The ALJ thus found the "paragraph B" criteria were not satisfied (Tr. 16-17). In support of her position that she meets these Listings, the claimant references only Dr. Rippy's statement that her "symptoms are moderate to severe and result in social and occupational impairment," and asserts that this opinion "clearly demonstrates she meets/exceeds Listing 12.15, and possibly 12.04 and 12.06." [6] In other words, the claimant asks the Court to reweigh the evidence in the record, which the Court cannot do. *See Casias*, 933 F.2d at 800 ("In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency."). Moreover, as set forth above, the ALJ clearly considered the effect of the claimant's anxiety, depression, and PTSD when assessing the RFC. *See Padilla v. Colvin,* 2015 WL 5341788, at *4 (D. Colo. Sept. 15, 2015) (finding no reversable error at step three where the claimant did not "show with specificity how the ALJ may have erred in his evaluation" and "it [was] clear that the ALJ considered the effect of [the claimant's impairments] on her RFC.").

Lastly, the claimant argues that the ALJ erred at step five because he omitted the VE's testimony that missing work at least once a week on an unscheduled basis would preclude all employment. However, the ALJ properly rejected the claimant's assertion that

---

[6] The claimant also identifies Dr. Kranau's statement that she "cannot perform physical or sedentary duties of employment," as support that she meets Listings 12.04, 12.06, and 12.15, but the undersigned Magistrate Judge finds this statement irrelevant because it relates to exertional limitations and the Listings at issue relate to mental impairments. The undersigned Magistrate Judge further notes the claimant does not otherwise challenge the ALJ's analysis of Dr. Kranau's opinion.

-18-

she would miss one day of work per week by explaining how it was inconsistent with the record and did not include such limitation in his RFC determination. A properly phrased hypothetical question is one that "include[s] all-and only-those impairments borne out by the evidentiary record." *Bean v. Chater,* 77 F.3d 1210, 1214 (10th Cir. 1995). Thus, an ALJ is "not required to accept the answer to a hypothetical question that include[s] limitations claimed by plaintiff but not accepted by the ALJ as supported by the record." *Id.*

The undersigned Magistrate Judge finds that the record sufficiently presents the facts and legal arguments in this case, and thus does not believe that oral argument would aid in resolving any of the issues presented. Accordingly, the claimant's request for oral argument is hereby denied.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 3rd day of September, 2019.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**